UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LILLIAN WALLER,

                        Plaintiff,

            -v-                                    05-CV-0878-C

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

            Plaintiff Lillian Waller initiated this action pursuant to 42 U.S.C. § 405(g) to review

the final determination of the Commissioner of Social Security ("Commissioner") denying

her application for Supplemental Security Income ("SSI") benefits.  The Commissioner has

filed a motion for judgment on the pleadings, and the plaintiff has cross-moved for the

same relief, pursuant to Fed. R. Civ. P. 12(c).   For the following reasons, the

Commissioner's motion is denied, and plaintiff's cross-motion is granted.

## BACKGROUND

            Plaintiff was born on December 10, 1956 (T. 16). She is a high school graduate

(T. 25-26) and has no significant work history (T. 99).  Plaintiff applied for SSI benefits on

November 19, 2002, alleging a disability onset date of June 4, 2002 (T. 86-89).   She

alleges disability based on anemia (T. 99).  Plaintiff's application was denied initially on

March 14, 2003 (T. 58-62).  Plaintiff  then requested a hearing (T. 63-64) and appeared,

with counsel, before Administrative Law Judge ("ALJ") Marilyn D. Zahm on February 17,

2005 (T. 19-57).  In a decision dated May 19, 2005, the ALJ determined that plaintiff was

not under a disability at any time through the date of her decision and not entitled to SSI

benefits. (T. 17-18).

The ALJ's decision became the Commissioner's final determination on

November 10, 2005, when the Appeals Council declined plaintiff's request for review (T.

3-5).  On December 15, 2005, plaintiff instituted this action, seeking judicial review of the

Commissioner's final determination (Item 1).   The Commissioner filed an answer on

March 15, 2006 (Item 3), and moved for judgment on the pleadings on June 23, 2006 (Item

5).  Plaintiff filed a cross-motion for judgment on the pleadings on June 23, 2006 (Item 7)

on the grounds that the decision is not supported by substantial evidence.

## DISCUSSION

### I.    Scope of Judicial Review

To qualify as disabled for purposes of being entitled to SSI benefits, an individual

must be unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than twelve

months."  42 U.S.C. § 1382c(a)(3)(A).  The Social Security Act states that, upon district

court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to

any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C.

§ 405(g).  Substantial evidence is defined as evidence which "'a reasonable mind might

accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401

(1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *see also*

*Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).  Under these standards, the scope of judicial review of the Commissioner's decisions is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner. *Richardson*, 402 U.S. at 401.  "The court's sole inquiry is 'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner."  *Winkelsas v. Apfel*, 2000 WL 575513, at *2 (W.D.N.Y. February 14, 2000) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

However, "'[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in light of correct legal standards.'"  *Gartmann v. Secretary of Health and Human Services*, 633 F. Supp. 671, 680 (E.D.N.Y. 1986) (quoting *Klofta v. Mathews*, 418 F. Supp. 1139, 1141 (E.D. Wis. 1976)).  The Commissioner's determination cannot be upheld when it is based on an erroneous view of the law that improperly disregards highly probative evidence. *Tejada*, 167 F.3d 773.

## II.    Standards for Determining Eligibility for SSI Benefits

The Social Security regulations set forth a five-step process by which the ALJ is to evaluate disability claims.  *See* 20 C.F.R. § 416.920.  The first step of this process requires the ALJ to determine whether the claimant is presently engaged in substantial gainful activity.  If so, she will be found to be not disabled without consideration of her medical condition. 20 C.F.R. § 416.920(b).  If the claimant is not engaged in work activity, the ALJ must then decide if the claimant has an impairment or combination of impairments that significantly limits her physical or mental ability to do basic work activities.  If she does not

3

have such an impairment, her claim will be denied without consideration of her age, education, and work experience. 20 C.F.R. § 416. 920(c).

If the claimant's impairment is severe, the ALJ then determines whether the impairment is listed in 20 C.F.R. § 404, Subpart P, Appendix 1 ("the Listings"), or is medically equal to a listed impairment. If the impairment meets or equals a listed impairment, the claimant will be found to be disabled without considering vocational factors. 20 C.F.R. § 416.920(d). If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity ("RFC") to perform her past relevant work. If so, the claimant will be found to be not disabled. 20 C.F.R. § 416.920(f). Finally, if the claimant is not capable of performing her past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing other work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC, based on a series of charts provided in the regulations at 20 C.F.R. § 404, Subpart P, Appendix 2 (the "Grids"). *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Reyes v. Massanari*, 2002 WL 856459, at *3 (S.D.N.Y April 2, 2002).

The claimant bears the burden of proof with respect to the first four steps of the analysis. If the claimant demonstrates an inability to perform past work, the burden shifts to the Commissioner to show that there exists other work that the claimant can perform. *See Rosa v. Callahan,* 168 F.3d 72, 77 (2d Cir. 1999).

In this case, the ALJ determined that plaintiff had not engaged in substantial gainful employment activity since the date of the alleged disability onset. In reviewing plaintiff's medical records, the ALJ noted that plaintiff suffers from anemia, an impairment that is

4

"severe" within the meaning of the Regulations, but that her impairments did not meet or medically equal, either singly or in combination, any of the impairments in the Listings (T. 14).

Proceeding to step four of the sequential evaluation process, based on the record and plaintiff's testimony, the ALJ found that plaintiff had no past relevant work experience. However, the ALJ determined that plaintiff had the RFC to perform the demands of the full range of light work available in the national and regional economy based on plaintiff's age, education, and vocationally relevant past work experience (T. 16-17).  In making this determination, the ALJ found that plaintiff's allegations of limitations were not consistent with the evidence in the record (T. 16).  Utilizing the Grids, the ALJ determined that plaintiff, a younger individual with a high school education, can perform the full demands of light work and was, therefore, not under a disability for purposes of the Social Security Act at any time through the date of the decision and not entitled to SSI benefits (T. 17).

The Commissioner contends that these findings are supported by substantial evidence.  Plaintiff contends that the ALJ's determination that her impairments do not prevent her from performing substantial gainful activity is not supported by substantial evidence. First, the plaintiff contends that her anemia meets and/or equals the criteria of Listing 7.02 - Chronic Anemia.  Additionally, the plaintiff contends that it was improper for the ALJ to rely on her failure to take prescribed medication as a basis for finding her not disabled.  Plaintiff also contends that the ALJ did not properly assess her subjective complaints, and erred in her reliance on the Grids in determining that she is not disabled.

III.    **The Medical Evidence**

From 1994 - 2002, plaintiff received approximately eight blood transfusions for treatment of her chronic anemia (T. 155, 158, 163-64, 167, 172, 186, 202, 215, 295).  On May 23, 2003, plaintiff presented to the emergency room for complaints of weakness, fatigue, numbness in her fingers and toes, lightheadedness upon exertion, and intermittent, non-radiating chest pain on the left side (T. 299).  She reported that her menstrual periods entailed some heavy bleeding (*id.*).  Plaintiff also told the attending physician that she had been prescribed iron supplementation, but that she had been noncompliant (*id.*).  Plaintiff was admitted with symptomatic anemia, and was given a blood transfusion (*id.*).

On October 23, 2003, plaintiff again was admitted to the hospital, complaining of fatigue and shortness of breath.  She was diagnosed with anemia and uterine fibroids, and was given two blood transfusions on October 24, 2003 (T. 308).  At that time, plaintiff reported "poor compliance" with iron therapy (*id.*).  Plaintiff was also hospitalized on February 27, 2004, April 16, 2004, July 17, 2004, and October 1, 2004.  Each time, plaintiff was given a blood transfusion, was continued on iron supplements, and was advised to follow-up with OB/GYN (T. 292, 289, 304, 263).  During the hospitalization in October 2004, plaintiff underwent a pelvic ultrasound, which indicated that plaintiff's fibroids had increased in size.  A consulting OB/GYN stated that plaintiff should have an endometrial biopsy and possibly a hysterectomy (T. 263).  Plaintiff was also advised to undergo a hysterectomy in April 2004 (T. 290).

Plaintiff was admitted to the hospital on December 17, 2004 with complaints of chest pain (T. 239).  She was "markedly anemic" and was given a blood transfusion (*id.*).  A

6

consulting physician diagnosed plaintiff as suffering from anemia secondary to iron deficiency from heavy menstrual periods (T. 240).  He recommended that plaintiff be "more compliant with her oral iron" and suggested an alternative supplement that may be easier to tolerate (*id.*).

## IV.    Other Evidence

Plaintiff testified that her work experience included working in a shop approximately 30 years ago, and babysitting about 15 years earlier (T. 26).  She stated that she is unable to work because she is "really tired all the time" (T. 33).  Plaintiff spends her days "laying on her bed" or sitting in a chair wrapped in a blanket, either praying or reading the Bible (T. 27-28).  Her children assist her with chores, although she is able to care for herself, fix light meals, sort laundry, go shopping, socialize with friends, and knit (T. 29-31, 49).  Plaintiff stated that she stopped doing dishes and sweeping about one year prior to the hearing because it made her pass out (T. 50).  Plaintiff stated that she could walk about one-half block (T. 31).  She also stated that she could sit for hours in her recliner (T. 32).  Plaintiff stopped driving in 2000 because she was afraid she would pass out (T. 44).  Plaintiff stated that she sees Dr. Kenneth Gayles, and goes to the Sisters' Hospital Emergency Room for treatment (T. 34).  Plaintiff also takes medication for high blood pressure (T. 35).

## V.    Listing 7.02  - Chronic Anemia

Plaintiff alleges that she is disabled because she meets the requirements for Listing 7.02 - Chronic Anemia.  In order to meet Listing 7.02, plaintiff must demonstrate that she has a hematrocrit persisting at 30 percent or less due to any cause, with (A) one or more

blood transfusions on average of at least once every two months; or (B) evaluations of the resulting impairments under criteria for the affected body system.  20 C.F.R. § 404, Subpart P, Appendix 1, § 7.02.  "For a claimant to show that his [or her] impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

In reviewing plaintiff's medical records, the ALJ noted that plaintiff suffers from anemia, an impairment that is "severe" within the meaning of the Regulations, but not severe enough to meet the Listings (T. 17).  Although plaintiff required blood transfusions during the period of adjudication, in May 2003, October 2003, February 2004, April 2004, July 2004, October 2004, and December 2004, the frequency of these transfusions does not meet the requirement of one or more blood transfusions on an average of once every two months. *See* 20 C.F.R. § Pt. 404, Subpart P, Appendix 1, §7.02(A).  Accordingly, the ALJ properly determined that plaintiff's impairments were not "severe" enough to meet or medically equal, either singly or in combination, the impairment of chronic anemia in the Listings (T. 14).

## VI.    Noncompliance with Prescribed Treatment

In order to receive SSI benefits, a claimant must follow treatment prescribed by her physician if this treatment can restore the claimant's ability to work.  20 C.F.R. § 416.930.  The ALJ noted that claimant appeared to be non-compliant with medications, as evidenced by the bottles of medication she brought to the hearing and a pharmacy print-out of her filled prescriptions  (T. 15, 16).  The ALJ also noted plaintiff's admissions in the medical

records that she had been non-compliant with her iron supplement (T. 240, 299, 308).  In her decision, the ALJ questioned "whether . . . the claimant would need the same frequency of transfusions if she was compliant with her medication."  (T. 15.)[1]

Citing *Brown v. Apfel,* 174 F.3d 59 (2d Cir. 1999), plaintiff contends that the ALJ's speculation was improperly based on the ALJ's own interpretation of claimant's medical records.  In *Brown*, the Second Circuit held that the ALJ's opinion that most of claimant's seizures were caused by the claimant's failure to take his prescribed medication was improperly based on the ALJ's own interpretation of the medical records.  *Brown v. Apfel*, 174 F.3d at 63.  Here, however, plaintiff's reliance on *Brown* is misplaced.  In *Brown,* the ALJ rejected the court-appointed physician's opinion that the plaintiff's condition was disabling, and the ALJ made his own determination about claimant's condition.  *Id.* at 59.  Furthermore, the ALJ had the opportunity to question the physician about the potential link between the plaintiff's lapses and the onset of his seizures and did not do so.  *Id.*  Here, there is evidence that at times plaintiff did not take her medication and failed to follow the recommendations of her treating physicians to be more compliant.  The ALJ's statement was simply an observation based on plaintiff's medical records, not a medical determination, and was made in the context of the ALJ's determination that plaintiff's impairment did not meet the Listing for chronic anemia.

Additionally, plaintiff argues that the ALJ violated Social Security Ruling 82-59 by failing to give her proper notice of the effect of her noncompliance.  Under the Regulations,

---

[1] Also  troubling is plaintiff's apparent failure to pursue treatment with an OB/GYN provider as suggested in the medical records.  The records indicate plaintiff's anemia is caused by heavy menstrual bleeding, she has growing uterine fibroids, and was advised to have a hysterectomy.

a claimant may be denied disability benefits if the Secretary finds that she unjustifiably failed to follow prescribed treatment and that if she had followed the treatment, she would not be disabled under the Act.  *See* 20 C.F.R. § 416.930(a); *McFadden v. Barnhart*, 2003 WL 1483444, at *8 (S.D.N.Y. March 21, 2003) .

The Regulations emphasize that the ALJ must provide claimant with (i) notice of the effect of noncompliance on his or her application for benefits, (ii) the opportunity to explain any seeming noncompliance, and (iii) the opportunity to undergo the prescribed treatment. *Grubb v. Apfel*, 2003 WL 23009266 *5 (S.D.N.Y. Dec.22, 2003); Social Security Ruling ("SSR") 82-59, 1982 WL 31384 (1982).  SSR 82-59 mandates that before deciding that the claimant does not have a good reason for failing to follow treatment as prescribed by a treating source, which could be expected to restore the ability to engage in gainful activity, the claimant must be "informed of this fact and of its effect on eligibility for benefits."  SSR 82-59, 1982 WL 31384, at *5.

Here, the ALJ did not inform the plaintiff of the effect of her noncompliance with prescribed medication because the ALJ did not base her finding of no disability on plaintiff's noncompliance.  As stated above, the ALJ merely noted the evidence of plaintiff's noncompliance in finding that plaintiff did not meet the Listing for chronic anemia (T. 15). In that context, plaintiff's noncompliance with her various medications was irrelevant. Accordingly, the ALJ did not err in failing to advise the plaintiff about the effects on her eligibility for benefits of her noncompliance with prescribed treatment.

## VII.  Credibility of Plaintiff's Testimony

Plaintiff also contends that the ALJ erred in finding plaintiff's subjective testimony not credible as to the disabling nature and severity of her symptoms and functional limitations.  Where the alleged symptoms suggest that the impairment is greater than demonstrated by objective medical evidence, the ALJ will consider other factors, such as daily activities; the location, duration, frequency, and intensity of symptoms; the type, effectiveness, and side effects of medication; and other treatment or measures to relieve those symptoms.  *See* 20 C.F.R. § 416.929(c)(3); Social Security Ruling ("SSR") 96-7P, 1996 WL 374186 (July 2, 1996).  When an ALJ discredits hearing testimony, he or she must articulate the reasons for doing so "with sufficient specificity to permit intelligible plenary review of the record." *Williams on Behalf of Williams v. Bowen,* 859 F.2d 255, 261 (2d Cir. 1988).  After weighing the objective evidence, the claimant's demeanor, and other indicia of credibility, as well as any inconsistencies between the medical evidence and a claimant's subjective complaints, the ALJ may decide to disregard the claimant's subjective opinion with respect to degree of impairment.  *See* 20 C.F.R. § 416.929(c)(4); *see also Smith v. Apfel*, 69 F. Supp. 2d 370 (N.D.N.Y. 1999).

In this case, the ALJ summarized the essential details of plaintiff's testimony regarding pain, symptoms, and limitations (T. 15-16 ).  The ALJ then found that plaintiff's allegations were not supported by the medical record, which did not contain findings that could reasonably be expected to result in the alleged symptoms and limitations (T. 16).  Specifically, the ALJ relied on diagnostic tests conducted on plaintiff (T. 15).  Her endoscopy studies in 2003 were normal, and a small bowel biopsy and colonoscopy were

normal (*id.*).   An endoscopy in July 2004 revealed esophagitis with erosions and mild

gastritis with erosions (*id.*).   Further tests to determine the source of blood loss causing

anemia revealed normal chest x-rays, uterine fibroids, a normal abdominal ultrasound, a

normal CT scan of the head, and a negative test for deep venous thrombosis (*id.*).   The

ALJ noted that there was no evidence of an impairment that would affect the ability to sit,

yet plaintiff stated she could only sit for one-half hour (T. 16, 32).   The ALJ also noted that

plaintiff had no work record that would raise a favorable inference of an individual well-

motivated to work (T. 16).   The ALJ considered the fact that plaintiff was noncompliant with

oral iron supplements, suggesting that plaintiff's subjective complaints of fatigue are not

as severe as stated (*id.*).   The ALJ noted that plaintiff attends to her own self care, and

spends her time praying, reading the Bible, knitting, cooking quick meals, doing laundry,

grocery shopping, attending church, and socializing with family members (T. 15).   Based

on the above, the ALJ concluded that plaintiff's allegations regarding her inability to do any

work were overstated, and that her daily activities were consistent with work of light

exertion (T. 16).

The ALJ erred in considering the effect of plaintiff's noncompliance with oral

medications in assessing plaintiff's credibility.   SSR 96-7P provides that

> [T]he adjudicator must not draw any inferences about an individual's
> symptoms and their functional effects from a failure to seek or pursue regular
> medical treatment without first considering any explanations that the
> individual may provide, or other information in the case record, that may
> explain infrequent or irregular medical visits or failure to seek medical
> treatment.

SSR 96-7P, 1996 WL 374186,  *7 (July 2, 1996) .   While the medical records indicate that

plaintiff had been non-compliant with iron medication in the past, the ALJ did not question

plaintiff regarding her compliance with the oral iron supplements at the time of the hearing. Plaintiff was not given the opportunity to explain any reasons she may have for her noncompliance, or to explain whether she actually complied with the iron supplements. While the ALJ articulated her rationale for discrediting plaintiff's testimony, her reliance on plaintiff's noncompliance violated SSR 96-7P.  *See Iuteri v. Barnhart,* 2004 WL 1660580, *12 (D.Conn. March 26, 2004).   A remand is necessary to properly assess plaintiff's credibility.

## VIII.  Reliance on the Vocational Rules

Finally, plaintiff contends that the ALJ erred in relying solely on the Grids in determining that plaintiff was not disabled.  The ALJ's burden at step five of the sequential evaluation is ordinarily satisfied by referring to the applicable Grid rules.  *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999); *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986). The Grids take into account the claimant's residual functional capacity in conjunction with her age, education, and work experience. *See* 20 C.F.R. § 416.969; *Rosa*, 168 F.3d at 78. Based on these factors, the Grids indicate whether the claimant can engage in any substantial gainful work existing in the national economy.  *Id.*

The Commissioner's ability to rely solely on the Grids may be precluded where a claimant's exertional limitations are compounded by significant nonexertional limitations that limit the range of work that the claimant can perform.   In such a situation, the Commissioner must introduce vocational expert testimony (or other similar evidence) to show that jobs exist in the economy.  *Rosa*, 168 F.3d at 78; *Bapp*, 802 F.2d at 603.

However, the converse is also true, and application of the Grids is appropriate where an individual's nonexertional limitations do not "significantly diminish" the range of work permitted by a claimant's exertional limitations. *See Bapp*, 802 F.2d at 605-06. A claimant's work capacity is "significantly diminished" if there is an "additional loss of work capacity . . . that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Id.* at 606.

Here, the ALJ relied exclusively on the plaintiff's testimony to determine her RFC. In determining that plaintiff's daily activities were consistent with light work, the ALJ found that plaintiff cooked, did dishes and laundry, and shopped (T. 16). These findings are not supported in the record. Plaintiff testified that she stopped doing dishes approximately one year prior to the hearing (T. 29), prepared only light meals such as soup in the microwave oven (*id.*), and gathered laundry but did not actually take the clothes into the basement to wash them (T. 30). Plaintiff stated that she can walk about one-half block, and that her children do not like to take her shopping because she is too slow (T. 31). There were no RFC assessments by medical providers in the record.

The ALJ's determination that plaintiff can do the full range of light work is not supported by substantial evidence. If plaintiff is only capable of doing sedentary work, reliance on the Grids is inappropriate. She is a younger individual with a high school education, but no relevant work experience. As such, there is no rule that would direct a finding of disabled or not disabled, and additional evidence would be required to determine whether plaintiff is capable of performing work that exists in the national economy. *See* 20 C.F.R. Subpart P, Appendix 2, Table No. 1. Remand is necessary to properly assess plaintiff's RFC and her ability to perform work in the national economy.

14

## CONCLUSION

For the reasons stated above, the Commissioner's motion is denied, and the plaintiff's cross-motion is granted.  The matter is remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g).

So ordered.

_____\s\ John T. Curtin___
JOHN T. CURTIN
United States District Judge

DATED:    2/7                        , 2007
p:\opinions\05-878.jan2207